UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WALTHER WEILAND,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CITY OF CONCORD, et al.,<br><br>　　　　Defendants. | Case No.  13-cv-5570-JSC<br><br>**ORDER RE: DISCOVERY LETTER BRIEF RE: PRIVILEGE LOG DISPUTE**<br><br>Re: Dkt. Nos. 33, 34 |

Plaintiff Walther Weiland alleges that Defendants violated his civil rights during an incident wherein he was arrested by an off-duty police officer for Defendant City of Concord following a traffic accident. Now pending before the Court is a discovery dispute regarding redactions of Plaintiff's medical records relating to his mental health from 2008 through the present. The Court previously ordered Plaintiff to provide unredacted copies of his medical records, but permitted him to withhold information regarding his mental health because he only sought garden variety emotional distress damages. After carefully considering the arguments and briefing submitted, including an *in camera* review of a sampling of documents, and having had the benefit of oral argument on October 2, 2014, the Court sustains Plaintiff's privacy objections in part.

**BACKGROUND**

On February 17, 2013, Plaintiff Walther Weiland was involved in a traffic accident with Defendant Kevin Mansourian, an off-duty police officer for the City of Concord. Although the parties dispute who caused the accident, it is undisputed that after the accident the parties pulled over to the side of the road. The parties' versions of events thereafter sharply diverge with each contending that the other party acted in an unprovoked road rage-like manner. Plaintiff contends

1  that Defendant Mansourian, who was not wearing a uniform, charged towards Plaintiff screaming
2  profanities, identifying himself as a police officer, and stating that Plaintiff was under arrest. (Dkt.
3  No. 1 ¶ 18.) When Plaintiff asked to see Defendant Mansourian's badge, Plaintiff alleges that
4  Mansourian violently assaulted Plaintiff slamming him to the ground face-first and placing
5  Plaintiff in a control hold with his hands behind his back and Defendant Mansourian on top of him
6  with his knee in Plaintiff's back. (*Id.* ¶ 18-19.) Plaintiff contends that he requested that Defendant
7  Mansourian take his weight off him because he has a stent in his heart. (*Id.* ¶ 20.) Defendant
8  contends that Plaintiff resisted arrest so he took Plaintiff to the ground and restrained him for
9  about five minutes until the California Highway Patrol arrived. (Dkt. No. 14 ¶ 5.) Defendant also
10 alleges that he thought Plaintiff was under the influence. (*Id.*)

11  Plaintiff alleges that he suffered severe physical injuries as a result of this incident,
12 including but not limited to a radial head fracture of his right arm, bruised ribs, cuts, and
13 lacerations. (Dkt. No. 1 ¶ 32.) He brings claims against Defendant Mansourian, the City of
14 Concord, and City of Concord Chief of Police Guy Swanger for violation of his civil rights under
15 state and federal law, as well as various state law claims. Plaintiff seeks compensatory and
16 punitive damages.

17  As part of Plaintiff's initial disclosures he produced redacted versions of his Kaiser
18 medical records from February 17, 2013 to the present. Following a discovery dispute, the Court
19 ruled that he was required to produce unredacted versions of his medical records from 2008
20 through the present because Plaintiff had waived his privacy rights with respect to these records by
21 bringing this lawsuit seeking damages and thus putting at issue the extent of his medical injuries;
22 however, the Court concluded that Plaintiff was not required to produce unredacted copies of his
23 mental health records as Plaintiff only seeks garden variety emotional distress. (Dtk. No. 24.)
24 Thereafter, the underlying discovery dispute arose regarding the discoverability of certain mental
25 health records. Both parties submitted briefing regarding the matter and the Court reviewed a
26 portion of the disputed documents *in camera* to evaluate the nature of the information being
27 withheld as it related to Plaintiff's mental health condition or treatment.
28

**DISCUSSION**

Rule 26 of the Federal Rules of Civil Procedure authorizes discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). A party who resists discovery has the burden of demonstrating that it should not be allowed. *Oakes v. Halvorseen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. Cal. 1998) (citation omitted). As reflected by the language of Rule 26, a party may fulfill this burden by making a proper assertion of privilege. *See Oakes*, 179 F.R.D. at 284 (citing Fed. R. Civ. P. 26(b)(5); *Walt Disney Co. v. DeFabiis*, 168 F.R.D. 281, 283 (C.D. Cal. 1996)).

In cases involving both state and federal claims where the evidence in question is relevant to both the state a federal claims, federal privilege law applies. *Fitzgerald v. Cassil*, 216 F.R.D. 632, 635 (N.D.Cal. 2003). Thus where, as here, Plaintiff alleges a Section 1983 claim as well as state law claims and the evidence would be relevant to damages claims under either, federal privilege law applies. *See Stallworth v. Brollini*, 288 F.R.D. 439, 442 (N.D. Cal. 2012).

**A. The Nature of the Privilege Asserted Here**

Plaintiff initially claimed privilege based on the federal psychotherapist-patient privilege. This privilege protects "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment [] from compelled disclosure under Rule 501 of the Federal Rules of Evidence." *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996) (footnote omitted). "Like other testimonial privileges, the patient of course may waive the protection." *Id*. at 15 n.14. "In the wake of *Jaffee*, courts have struggled to determine the circumstances under which waiver of the psychotherapist-patient privilege occurs" which has resulted in a variety of approaches to waiver falling into three primary categories: the broad view, the limited broad view, and the narrow view of waiver. *Stallworth*, 288 F.R.D. at 443 (outlining the various approaches taken by district courts within the Ninth Circuit).

The Court previously held that the privilege is not waived where, as here, Plaintiff is only seeking garden variety emotional distress damages; the Court thereby adopted the narrow view of waiver favored by courts within this District. *See Stallworth*, 288 F.R.D. at 443 (noting that "[w]hile the Ninth Circuit has yet to consider the standard, the courts in this district that have

considered the matter in-depth and affirmatively adopted [] the narrow approach because it most closely follows the reasoning in *Jaffee*" and citing cases to this effect.) Plaintiff has since affirmed that he does not allege any "specific psychiatric injury or disorder or unusually severe emotional distress," and that his emotional distress is limited to "what an ordinary person subjected to similar circumstances would experience," but the distress is not ongoing, nor was it prolonged. (Dkt. No. 34-2.). In addition, Plaintiff does not intend to call a mental health expert. Given these representations, which Plaintiff will be held to at trial, the Court concludes that Plaintiff has not waived the psychotherapist-patient privilege based on his allegations of emotional distress related to the incident. *See Equal Employment Opportunity Comm'n v. Peters' Bakery*, No. 13-CV-04507, 2014 WL 4648087, at *3 (N.D. Cal. Sept. 17, 2014) (finding no waiver where plaintiff only alleged "'garden variety' emotional distress damages and expressly stated that 'there is no claim for a specific psychiatric injury or disorder; there is no claim of unusually severe distress, and Plaintiff will not have a mental health expert testify in its case.'").

Although Plaintiff initially indicated that the information redacted from Plaintiff's medical records at issue here was subject to the psychotherapist-patient privilege, at the hearing Plaintiff conceded that the privilege does not apply to the majority of the redacted information. Plaintiff has redacted three categories of information from the medical records: (1) information regarding his mental health diagnosis, (2) the names of prescriptions used to treat his mental health condition, and (3) descriptions of his mental health treatment.[1]

The Court, having reviewed a sampling of the previously-produced records *in camera*, agrees that the psychotherapist-patient privilege does not apply to the majority of this information. Only a very small portion of the redactions, *see, e.g.*, pages 2 (partial), 106 (partial), 113-116 (partial), and 135, contain "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment." *Jaffee*, 518 U.S. at 15. The portions of these pages which do contain such communications are protected by the psychotherapist-patient privilege regardless of whether the mental health provider may have been Plaintiff's primary care

---

[1] Plaintiff's medical and mental health records are intermingled because his health care provider provides fully integrated health care.

1  physician rather than a psychotherapist, and as discussed *supra*, there has been no waiver of this
2  privilege.
3        Turning to the other redacted information, the majority of the redactions relate either to
4  Plaintiff's mental health diagnosis and medications he takes as a result of this diagnosis or to
5  mental health treatment which predated the February 2013 incident—in particular, treatment
6  which occurred in June and July 2012 (seven months prior to the incident). The question then is
7  whether this information is relevant, and if so, whether it is shielded from disclosure under a
8  general right to privacy.

### B. Relevance of the Withheld Information

10       The threshold inquiry with this, and any discovery dispute, is relevance. *See* Fed. R. Civ.
11 P. 26(b) (Subject to the limitations imposed by Rule 26(b)(2)(C), "[p]arties may obtain discovery
12 regarding any nonprivileged matter that is relevant to any party's claim or defense...."). Relevant
13 information encompasses "any matter that bears on, or that reasonably could lead to other matter
14 that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*,
15 437 U.S. 340, 351 (1978).
16       As an initial matter, the Court notes that none of the redacted information concerns mental
17 health treatment Plaintiff received following the incident. It is therefore not relevant to any claims
18 related to damages. Defendant contends that the information is, however, relevant to whether
19 something about Plaintiff's mental health condition or the medication he may have been taking for
20 his mental health condition contributed to the underlying incident in some way.
21       Of the above categories of redacted information, the Court concludes that the only one
22 which satisfies the threshold relevance inquiry is information regarding the prescriptions Plaintiff
23 was taking at the time of the incident.[2] The medication information is relevant to allow
24 Defendants to develop their theory of the underlying incident; although it may not ultimately be
25 admissible at trial, the question now is only relevance. In contrast, the information regarding
26 Plaintiff's mental health diagnosis and his treatment prior to the incident is not relevant.

---

[2] This does not include any information regarding the medication to which Plaintiff is allergic—information regarding Plaintiff's drug allergies has no relevance to the issues in this case.

1    First, with respect to Plaintiff's mental health diagnosis, Defendants can offer no more than
2 speculation that Plaintiff's mental health condition factored into the underlying incident with
3 Defendant Mansourian. Notably, Defendants do not allege that Plaintiff was behaving erratically
4 or that he presented a danger to himself or others once he exited the vehicle. Rather, Defendants
5 allege that Defendant Mansourian believed that Plaintiff was under the influence and that he was
6 resisting arrest. (Dkt. No. 14 ¶ 5.) These allegations are devoid of any facts which would suggest
7 that Plaintiff's mental health was a factor and Plaintiff has not withheld information regarding his
8 prior treatment for alcoholism.

9    Instead, Defendants ask the Court to infer that because a person has a certain mental health condition they acted a certain way, but what is relevant is *how* they acted—not the condition; Defendants are free to question Plaintiff and other witnesses regarding his behavior. Defendants do not cite any case suggesting otherwise, and indeed, the legal framework governing excessive force cases confines the inquiry to the facts known to the officer at the time. A claim of excessive force is evaluated under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 387 (1989). Under this standard, "[t]he reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. at 396 (internal citation and quotation marks omitted). Further, "the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them." *Id*. at 397 (internal citation and quotation marks omitted). Thus, the reasonableness of Defendant Mansourian's conduct depends on Plaintiff's behavior at the time of the incident and the totality of the circumstances present, not on whether his conduct was reasonableness in light of a post-hoc discovery of Plaintiff's mental health status. *See Jones v. City of Oakland*, No. 12-1416, 2013 WL 4102228, at *2 (N.D. Cal. Aug. 12, 2013) (holding that information regarding a defendant police officer's mental state was irrelevant under *Graham* because his "private mental health information is not necessary to determine whether his use of force against Plaintiff was constitutional."). The Court likewise rejects Plaintiff's "tit for tat suggestion" that Defendant Mansourian's mental health is relevant under the same theory.

    Further, to hold that a plaintiff's mental health condition is relevant would open the

6

floodgates into discovery of a plaintiff's mental health every time a civil rights excessive force action was filed. *See, e.g., Verma v. Am. Express*, No. 08-2702, 2009 WL 1468720, at *1 (N.D. Cal. May 26, 2009)("A plaintiff does not put her mental or physical condition at issue through a simple sexual harassment claim asking compensation for having to endure an oppressive work environment or for wages lost following an unjust dismissal .... To hold otherwise would mean that every person who brings such a suit implicitly asserts he or she is mentally unstable, obviously an untenable proposition.") (internal citation and quotation marks omitted).  Allowing such discovery is contrary to the remedial purpose of civil rights statutes designed to ensure litigants access to the courts. *See Fitzgerald v. Cassil*, 216 F.R.D. 632, 639 (N.D. Cal. 2003)(finding that a narrow interpretation of the protections afforded by the psychotherapist-patient privilege would undermine the purpose of providing effective access to the judicial process in suits vindicating civil rights and seeking recovery for general damages) (internal citation and quotation marks omitted).

Second, as to the treatment Plaintiff received for his mental health condition, and in particular, the treatment records from June-July 2012, these records are insufficiently close in time to the incident at issue to render them probative of Plaintiff's conduct seven months later. *See Bull v. City & Cnty. of San Francisco*, No. 03-1840, 2003 WL 23857823, at *1 (N.D. Cal. Oct. 27, 2003) (finding jail intake screening reports containing plaintiff's mental health information "close in time to the days of [plaintiff]'s confinement are relevant and that, as a general matter, the more remote in time documents are the less relevant they are.").  It would be a different question if the records related to treatment Plaintiff had received immediately prior to the incident, but there is no evidence of such treatment before the Court.

Thus, the Court concludes on the present record that Defendant has failed to demonstrate that Plaintiff's mental health diagnosis or his treatment for that diagnosis received in the seven or more months prior to the incident are relevant to any of the claims or defenses asserted herein.[3]

---

[3] The redacted statements of Plaintiff's family members in the June-July 2012 medical records are likewise irrelevant as they have nothing to do with the underlying incident.

7

**C. Privacy of Medical Records**

Having concluded that the information regarding which prescriptions Plaintiff was taking at the time of the incident is relevant, the Court turns to Plaintiff's privacy interest in this information. Courts recognize a general right to privacy which protects the confidentiality of one's medical records. *See Soto v. City of Concord*, 162 F.R.D. 603, 618 (N.D. Cal. 1995) (citing *Whalen v. Roe*, 429 U.S. 589, 599-600 (1977)); *see also Doe v. Attorney General of U.S.*, 941 F.2d 780, 795–96 (9th Cir. 1991) (establishing that information regarding a person's HIV status would fall within the ambit of the privacy protection afforded medical information). Medical records are also protected under the Health Information Portability and Accountability Act ("HIPAA") 42 U.S.C. section 299b–2; however, HIPAA allows disclosure of medical records in response to a court order. *See* 45 C.F.R. § 164.512(e)(1).

Highly sensitive information regarding Plaintiff's mental health diagnosis and treatment he has received for that diagnosis is unquestionably private personal information. It is thus covered by a general right to privacy; however, this "right is conditional rather than absolute and limited impairment of that right may be allowed if properly justified." *Caesar v. Mountanos*, 542 F.2d 1064, 1068 (9th Cir. 1976) "The resolution of a party's privacy objection involves balancing the need for the information sought against the privacy right asserted." *Medina v. Cnty. of San Diego*, No. 08-1252, 2014 WL 4793026, at *4 (S.D. Cal. Sept. 25, 2014). *Compare Jaffee*, 518 U.S. at 17-18 (explicitly stating that the psychotherapist-patient privilege is not subject to a balancing test). "The more sensitive the information, the stronger the [] interest must be." *Doe v. Attorney Gen. of U.S.*, 941 F.2d 780, 796 (9th Cir. 1991).

With respect to the limited category of information relevant here—that is, those medications Plaintiff was taking at the time of the incident as specified in his February 18, and 25 2013 medical reports—the Court concludes that Plaintiff's privacy interest in this information is outweighed by Defendants right to discover information related to Plaintiff's physical state at the time of the incident, including whether he was taking medications which together or separately makes Defendants' version of events more credible or may affect Plaintiff's physical injuries.

Again, this does not mean this information would be admissible at trial, it just means Defendants have the right to discover the information.

### D. Miscellaneous Issues with Plaintiff's Redactions

As discussed at the hearing, Plaintiff's redaction from page 373 based on attorney-client privilege is overruled. The information from the top of the page is not covered by the attorney-client privilege.

As for Plaintiff's inadvertent disclosure of certain private mental health information, Defendants are not allowed to use this information to question Plaintiff or other percipient witnesses. Although Defendants are allowed to pose hypotheticals to their experts regarding various matters, Defendants cannot inform the experts or others that Plaintiff has a particular mental health condition.

## CONCLUSION

For the reasons set forth above, the Court sustains Plaintiff's objections to producing the withheld information from his medical records, except with respect to the information regarding the prescriptions he was taking at the time of the incident as reflected in his February 18 and 25, 2013 medical reports, and as otherwise set forth in Section C *supra*.

The Administrative Motions to Seal at Docket Nos. 33 and 34 are GRANTED. This Order disposes of the pending discovery dispute.

**IT IS SO ORDERED**.

Dated: October 20, 2014

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge